UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | |
|---|---|
| JASON SPOONER, )<br>)<br>      Plaintiff )<br>)<br>  v. )<br>)<br>BOYNE USA, INC., )<br>BOYNE RESORTS MANAGEMENT, LLC, )<br>SUGARLOAF MOUNTAIN CORPORATION ,)<br>EGAN ENTERTAINMENT NETWORK, INC., )<br>and DAN EGAN, individually, )<br>)<br>      Defendants )| CIVIL ACTION NO.: 2:08-CV-262 |

**AFFIDAVIT OF ROBERT GERARD**

NOW COMES Robert Gerard, being duly sworn, deposes and states:

1. I am an attorney licensed to practice in California and numerous Federal Courts throughout the United States. I am a shareholder in the Firm of Friedman Stroffe & Gerard, P.C. and am the Chairperson of the Firm's Employment & Labor Law Practice Group and the Firm's Sports Law Practice Group. Attached hereto as Exhibit A is my professional biography from my firm's website.

I have represented several well known West Coast ski area clients including Snow Summit; Bear Mountain; Mountain High; Snow Valley; Sierra-at-Tahoe; and Northstar-at-Tahoe. I am also an avid skier, have skied all over the world, and have attended a few extreme ski clinics in Chamonix, France led by Dan Egan. Through skiing I became familiar with Dan Egan and struck up a friendship and an attorney-client relationship with him.

2. I am authorized by Dan Egan to reveal the following attorney-client communication; this is intended to be a limited waiver of the attorney client privilege. In September 2008, I received a telephone call from Dan Egan. We briefly discussed the complaint in the above-captioned action with which he had recently been served. Although I have litigated a few trademark cases, I am not primarily an intellectual property practitioner and am not admitted to practice before the U.S. District Court in Maine. However, from my review of the complaint, my conversation with Mr. Egan and a consultation with two of my Firm colleagues who are intellectual property attorneys, it was clear to me that this was a matter that did not involve significant damages and, from what I knew at that point, could and should be settled.

3. Having made that decision, I telephoned Plaintiff's counsel, Adam Taylor. I shared my analysis with him and he indicated that he shared my perception that the case could and should be settled early. I suggested that before any of the parties incurred substantial legal fees, we have some settlement dialogue and I even offered to travel to Portland, Maine in person (even though I was not being compensated) to discuss settlement face-to-face. Within a day or two he invited me to attend a voluntary settlement conference in Portland that was also to be attended by counsel for Sugarloaf. He repeated his agreement with my analysis regarding an early settlement and led me to believe that this matter could be settled for a reasonable amount. We had a very professional and indeed cordial telephone conversation. I believe that Mr. Taylor even offered to pick me up from the airport.

4. On September 24, 2008, I took a "red eye" from Los Angeles and did attend a settlement conference at Mr. Taylor's office on September 25, 2008. Mr. Taylor's associate, Kathryn Rowen, also attended the conference as an apparent observer.

5. The conference was remarkable. Departing entirely from the tenor of our prior conversations, Mr. Taylor started the meeting by aggressively lecturing me and John Osborn – counsel for Sugarloaf whom I had just met –about the merits of his client's case. He referred to his case as a "slam dunk" and remarked about the sizeable damage award (in the vicinity of $300,000) that his client was going to receive. He did not appear to even be remotely interested in what Mr. Osborn or I had to say. In my view he did not appear to have an understanding of what I understood (even with my limited knowledge of copyright law) to be the readily apparent difficulties with some of the positions he was asserting, among which was the difficulty of securing two awards of statutory damages.

6. Mr. Taylor seemed oblivious to the fact, which I clearly explained to him, that Mr. Egan had little in the way of assets and that I was undertaking this settlement effort without charging Mr. Egan.

7. During the conference Mr. Taylor said his client would not accept less than $150,000 to settle the case. At no time during the conference, which lasted approximately one hour, did Mr. Taylor indicate any willingness to accept any amount less than $150,000. In fact, at one point during the meeting Mr. Taylor became so unnecessarily aggressive that he threatened that if the case did not settle, then "maybe" we should have a discussion about what Mr. Taylor alleged were employment law violations by my clients.

8. After the conclusion of the unsuccessful settlement conference, I devoted my efforts to securing counsel for Mr. Egan in Maine and in providing occasional assistance to that attorney who has represented Mr. Egan throughout the proceedings. I have not charged Mr. Egan for my efforts nor will I do so.

DATED: July 1, 2010                    /s/ Robert Gerard
                                       Robert Gerard

STATE OF CALIFORNIA
Orange, ss.                                                                                  July 1, 2010

      Personally appeared the above-named Robert Gerard and made oath that the foregoing statements are true to the best of his knowledge, information and belief and where based upon information and belief, he believes the same to be true.

                                      /s/A.J. Harlow
                                      Notary Public